**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**BRYAN P.**,

*Plaintiff,*

v.

**COMMISSIONER OF SOCIAL SECURITY**,

*Defendant.*

No. 25-cv-15448

**OPINION**

**APPEARANCES**:

**Alan H. Polonsky**
POLONSKY & POLONSKY
512 S White Horse Pike
Audubon, NJ 08106

*On behalf of Plaintiff.*

**Andrew Charles Lynch**
**Lee Kovousis**
SOCIAL SECURITY ADMINISTRATION
LAW & POLICY, PROGRAM LITIGATION 3
6401 Security Boulevard
Baltimore, MD 21235

*On behalf of Defendant.*

**O'HEARN, District Judge.**

This matter comes before the Court on Plaintiff Bryan P.'s[1] appeal from the Commissioner of Social Security's final decision denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). The Court heard oral argument on October 5, 2026.

This case is unusual. Plaintiff applied for benefits more than thirteen years ago. Since then, four Administrative Law Judges ("ALJs") have found her not disabled; the Appeals Council has remanded once; and this Court has remanded twice, each time because the agency failed to adequately evaluate limitations associated with Plaintiff's obesity and ambulation. The most recent administrative decision again fails to adequately evaluate limitations associated with Plaintiff's obesity and ambulation in that it treats, inexplicably, the entire thirteen-year period from February 29, 2012, through July 11, 2025, under a single residual functional capacity ("RFC"). But Plaintiff underwent bariatric surgery on November 6, 2018, and there is indisputably materially different medical and functional evidence in the record before and after that surgery.

While the Court considered the possibility of making a finding of disability for the entire period, the Court cannot conclude that Plaintiff remained disabled throughout the entire thirteen-year period on the current record. Regrettably, after years of litigation, multiple hearings and two prior remands by this Court, the post-surgical record remains undeveloped and presents factual questions concerning medical improvement, new gastrointestinal symptoms, later work activity, and Plaintiff's functional capacity. These are issues that the agency must decide in the first instance. This is particularly disappointing because the Appeals Council previously remanded in

[1] Pursuant to this Court's Standing Order 2021-10, this Opinion will refer to Plaintiff solely by first name and last initial.

2021 for precisely this reason. Yet the ALJ failed to follow the remand edict and instead considered all the evidence in a single analysis, failing to make any distinction between Plaintiff's pre- and post-surgery condition.

But the record concerning the period before surgery is complete, and there is substantial evidence in the record which, when viewed as a whole, plainly establishes that Plaintiff was disabled from February 29, 2012, through at least November 6, 2018—the date of surgery. The Commissioner has had repeated opportunities to evaluate that period and no further development of the record for that period is warranted. Thus, further proceedings to evaluate whether Plaintiff was disabled during that period would serve no useful purpose.

Accordingly, the Commissioner's decision is **REVERSED**. The Court finds Plaintiff disabled from February 29, 2012, through at least November 6, 2018, and remands solely to: (1) calculate and award benefits for the period conclusively established by this Opinion, subject to any non-disability requirements of Titles II and XVI; and (2) determine whether and, if so, when Plaintiff's disability ceased after November 6, 2018, under the medical-improvement standard. In conducting that analysis, the Commissioner must formulate a period-specific, post-improvement RFC and must make express findings concerning the frequency, urgency, duration, and vocational consequences of Plaintiff's post-surgical gastrointestinal symptoms. A restriction to an "indoor environment for restroom access" is insufficient and does not satisfy that requirement.

## I. BACKGROUND

### A. Administrative History

Plaintiff filed applications for DIB and SSI on May 23, 2012, alleging disability beginning February 29, 2012. (AR 75). The applications were denied initially and again on reconsideration.

(AR 173–84, 188–93). After a hearing, an ALJ issued an unfavorable decision on February 26, 2015. (AR 13–38). The Appeals Council denied review. (AR 1–6).

Plaintiff sought judicial review. On June 6, 2017, this Court remanded because the ALJ had not addressed or adequately explained Plaintiff's ability to ambulate effectively. (AR 717, 729–51). Following another hearing, an ALJ issued a second unfavorable decision on December 4, 2019. (AR 611–59, 798–829). On May 25, 2021, the Appeals Council remanded to a different ALJ with specific instructions to reevaluate Plaintiff's RFC and her symptoms following bariatric surgery. (AR 830–38).

A new ALJ held a hearing on January 5, 2022, and issued a third unfavorable decision on July 15, 2022. (AR 551–610, 660–84). Plaintiff again sought judicial review. On October 31, 2023, this Court vacated that decision because the ALJ's cursory discussion did not permit meaningful review of the effects of Plaintiff's obesity in combination with Plaintiff's other impairments. (AR 3083). The Court emphasized that the omission was "particularly concerning" because ineffective ambulation and the effects of obesity were the reasons for the earlier judicial remand, and directed the agency to provide "a full and complete analysis and explanation" on remand. (AR 3099).

After yet another hearing at which Plaintiff and a vocational expert ("VE") testified, the ALJ issued the decision now under review on July 11, 2025. (AR 2929–60, 2976–3013). The ALJ found at step one that Plaintiff had engaged in some substantial gainful activity since 2023, after the alleged onset date, but that there was a continuous period of at least twelve months during which she did not engage in substantial gainful activity. (AR 2932). At step two, the ALJ identified bilateral knee osteoarthritis, asthma, obstructive sleep apnea, carpal tunnel syndrome, fibromyalgia, obesity status post bariatric surgery, mood disorder, and anxiety disorder as severe

impairments. (*Id.*). At step three, he found that no impairment or combination of impairments met or medically equaled a listed impairment. (AR 2934–41).

The ALJ then found Plaintiff had the RFC to perform sedentary work with some limitations. (AR 2941). The ALJ found that she could occasionally perform postural maneuvers but could never crawl or climb ladders, ropes, or scaffolds; had to avoid concentrated exposure to temperature extremes, environmental irritants, and workplace hazards; was "restricted to an indoor environment for restroom access"; could elevate her legs up to twelve inches for five minutes each hour while remaining on task; required a cane for ambulation but not balance; could follow simple instructions; and could not perform tandem, assembly-line, or hourly-quota work. (*Id.*).

Plaintiff had no past relevant work. (AR 2958). Relying on VE testimony, the ALJ found at step five that Plaintiff could work as a ticket checker, telephone-quotation clerk, or charge-account clerk. (AR 2958–60). He therefore found Plaintiff not disabled at any time from February 29, 2012 through July 11, 2025. (AR 2960).

**B. Relevant Pre-Surgical Evidence**

At onset, Plaintiff alleged disability principally from hypertension, sleep apnea, asthma, morbid obesity, and depression. (AR 262, 563). She reported limitations in lifting, squatting, bending, standing, reaching, walking, kneeling, climbing stairs, remembering, completing tasks, concentrating, understanding, following instructions, and interacting with others. (AR 282–83).

The contemporaneous medical evidence documented functional limitations extending beyond diagnosis alone. On August 27, 2012, consultative examiner Kenneth Klausman, M.D., observed a waddling gait, an inability to heel, toe, or tandem walk or squat more than one quarter of the way, and a need for assistance moving from a seated to a lying position. (AR 403–06). A left-knee x-ray showed medial-compartment osteoarthritis. (AR 424).

At a pulmonology visit in January 2013, Ramya Lotano, M.D., recorded complaints of shortness of breath, chest tightness, wheezing, and coughing and diagnosed moderate asthma, probable obstructive sleep apnea, uncontrolled gastroesophageal reflux disease, and morbid obesity. (AR 434–35). And on April 5, 2013, Samuel Wilchfort, M.D., diagnosed morbid obesity that made breathing difficult and caused Plaintiff's knee pain. He also documented bilateral knee pain with reduced range of motion, an inability to heel walk or squat, and chronic low-back pain with reduced range of motion. (AR 413–14). Similarly, Kathleen Heintz, D.O., recorded at a cardiology visit in December 2012 that Plaintiff became winded after walking short distances, described her as morbidly obese and chronically ill, and noted that she could not walk on a treadmill. (AR 440–43). Although subsequent cardiac testing was unremarkable, Dr. Heintz again described Plaintiff in April 2013 as chronically ill, morbidly obese, and "not doing that well." (AR 436–38).

Meanwhile, Patrick Cronin, D.O., a rheumatologist, treated Plaintiff from July 2014 through September 7, 2018, diagnosing polyarthralgia, polymyalgia, osteoarthritis, fibromyalgia, paresthesia, and morbid obesity. (AR 543, 549, 1302, 1379, 1381, 1547, 1819). A December 2014 pulmonary-function study showed moderate airflow obstruction and resulted in diagnoses of dyspnea and respiratory abnormality. (AR 1738–39). During pre-operative bariatric treatment from 2015 through 2017, Plaintiff remained morbidly obese with hypertension, asthma, obstructive sleep apnea, depression, arthritis, and a hernia. (AR 1752–53).

The record contains some contrary evidence. Plaintiff was described as stable from a pulmonary perspective shortly before onset. (AR 373). Her 2013 cardiac testing was unremarkable. (AR 436). In October 2015, a cardiologist reported good exercise tolerance and cleared her for bariatric surgery. (AR 1491, 1495, 1498–99). Various examinations also documented intact

strength, sensation, reflexes, or other normal findings. The ALJ relied on those findings, along with Plaintiff's limited use of a cane, conservative treatment for some impairments, and daily activities such as personal care, meal preparation, driving, shopping, and attending appointments. (AR 2934–35, 2937, 2946–58). But, as explained above, the ALJ did not adequately analyze the pre- and post-surgical functional capacity.

Plaintiff underwent bariatric surgery on November 6, 2018. The ensuing record reflects substantial weight loss and a changed clinical picture, but also new gastrointestinal complaints, including diarrhea, vomiting, and abdominal symptoms for which Plaintiff reported using Imodium and other medication. (AR 666–67, 672–73).

## II. LEGAL STANDARD

### A. Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000) (citation omitted). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000) (citations omitted); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations, quotation marks, and alteration omitted); *see also Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009).

The substantial evidence standard is a deferential standard, and an ALJ's decision cannot be set aside merely because a court "acting *de novo* might have reached a different conclusion." *Hunter Douglas, Inc. v. N.L.R.B.*, 804 F.2d 808, 812 (3d Cir. 1986) (citations omitted); *see also, e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citation omitted). "The presence of evidence in the record that supports a contrary conclusion does not undermine the Commissioner's decision so long as the record provides substantial support for that decision." *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 764 (3d Cir. 2009) (citation omitted).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). "The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham." *Id.* The Court has a duty to "'review the evidence in its totality,' and 'take into account whatever in the record fairly detracts from its weight.'" *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018) (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997)). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Hum. Servs.,* 722 F.2d 1150, 1153 (3d Cir. 1983) (citation omitted). Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citation omitted).

**B. Sequential Evaluation Process**

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i)–(v). The analysis proceeds as follows:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity[.]" If he is, he is not disabled. Otherwise, the ALJ moves on to step two.
>
> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" If the claimant lacks such an impairment, he is not disabled. If he has such an impairment, the ALJ moves on to step three.
>
> At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" If the claimant's impairments do, he is disabled. If they do not, the ALJ moves on to step four.
>
> At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work." A claimant's "[RFC] is the most [he] can still do despite [his] limitations." If the claimant can perform his past relevant work despite his limitations, he is not disabled. If he cannot, the ALJ moves on to step five.
>
> At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] . . . age, education, and work experience[.]" That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." If the claimant can make an adjustment to other work, he is not disabled. If he cannot, he is disabled.

*Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 201–02 (3d Cir. 2019) (internal citations and footnote omitted) (alterations in original).

On appeal, the plaintiff bears the burden of showing not merely that the ALJ erred, but that the error was harmful. *Peter G. v. Comm'r of Soc. Sec.*, No. 23-3797, 2024 WL 3518117, at *3 (D.N.J. July 24, 2024); *see also Holloman v. Comm'r Soc. Sec.,* 639 F. App'x 810, 814 (3d Cir. 2016).

## III. DISCUSSION

### A. The ALJ's Decision Does Not Adequately Separate Materially Different Periods

The dispositive defect is not that the ALJ failed to consider obesity or meaningfully consider it in his analysis. It is that he used a singular RFC to evaluate a period spanning more than thirteen years even though a major surgical intervention undisputedly and materially changed nearly all Plaintiff's symptoms, including but not limited to, her weight, impairment profile, treatment, assistive-device use, and work activity and created potentially new limitations related to post-surgery residual symptoms.

An RFC must identify the most a claimant can sustain in an ordinary workplace on a regular and continuing basis—ordinarily eight hours per day, five days per week—and must explain how the evidence supports each functional conclusion. SSR 96-8p, 1996 WL 374184, at *7. Obesity must be evaluated in combination with other impairments and in terms of its cumulative effect on the ability to function over time. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 503–04 (3d Cir. 2009). Here, the ALJ's analysis does not permit the Court to determine what he reasonably found Plaintiff capable of doing before November 6, 2018, because he relied repeatedly on evidence of Plaintiff's medical condition arising after surgery—including Plaintiff's reduced body mass index, later examinations, transition from a walker to a cane, and later activities—to support a single RFC encompassing a thirteen year period dating back to February 2012. (*See* AR 2943–50). But evidence that Plaintiff later improved post-surgery does not fairly or adequately establish that she possessed the same functional capacity before the surgery that produced the improvement. The error is not harmless. As explained above, prior to surgery, Plaintiff's obesity amplified the effects of objectively and persistently documented impairments, including knee osteoarthritis, reduced knee and lumbar motion, chronic pain, abnormal gait, difficulty transferring, asthma, and sleep

apnea. (*See* AR 403–06, 413–14, 424, 434–35, 440–43, 543, 549, 1302, 1379, 1381, 1547, 1738–39, 1752–88, 1819). After surgery, Plaintiff's weight and mobility changed, but new gastrointestinal symptoms emerged. (AR 666–67, 672–73). Those clearly delineated periods undoubtedly required separate functional findings which the ALJ failed to make.

The ALJ relied in part upon Plaintiff's daily activities; but daily activities do not bridge the gap here. The ability to attend appointments, perform personal care, prepare simple meals, drive, or shop intermittently does not, without further explanation, demonstrate the ability to remain productive for a full workday. *See Smith v. Califano*, 637 F.2d 968, 971–72 (3d Cir. 1981) ("Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity."). Nor do isolated normal findings negate the cumulative functional consequences of the impairments documented longitudinally. The agency is required to adequately reconcile the sporadic normal findings with this contrary evidence. *See Cotter v. Harris,* 642 F.2d 700, 705–07 (3d Cir. 1981).

Most significantly, this Court previously required a "full and complete analysis and explanation" of precisely these issues. (AR 3099). The latest decision contains more record summary, but it still fails to state a pre-surgical RFC or explain how post-surgical evidence establishes pre-surgical functional capacity which this case plainly required.

**B. The Record is Sufficiently Established for the Court to Find Disability Through November 6, 2018**

Ordinarily, the appropriate response to an inadequately explained decision is remand. But a court may direct an award of benefits without remanding. In deciding whether to directly award benefits, a district court should consider 1) the delay in the case, including how long the case has been pending and the number of prior appeals and remands; and 2) whether the record has been fully developed and substantial evidence supports the finding of disability. *See, e.g.*, *Podedworny*

*v. Harris*, 745 F.2d 210, 221–23 (3d Cir. 1984); *Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 357–58 (3d Cir. 2008); *Nunez ex rel. B.P. v. Kijakazi*, No. 23-1461, 2024 WL 1482613, at *8–9 (D.N.J. Mar. 26, 2024); *Michelle R. Q. v. Bisignano*, 807 F. Supp. 3d 462, 475 (E.D. Pa. 2025). The first factor is plainly satisfied in this case, which has now been pending for more than thirteen years with multiple prior district court remands. As to the second factor, the relevant considerations include whether additional factfinding would serve a useful purpose, whether the Commissioner has had a fair opportunity to develop and evaluate the evidence, and whether delay would merely postpone the receipt of benefits to which the claimant is entitled. *Podedworny*, 745 F.2d at 221–23.

Here, after a thorough review of the record as a whole, the Court finds that those conditions are satisfied for at least the period ending November 6, 2018. The medical record for that period has been complete for years. The agency has conducted multiple hearings and issued four merits decisions. The Appeals Council remanded once, and this Court remanded twice on issues repeatedly centered on Plaintiff's obesity, mobility, and functional capacity. Nothing suggests that another hearing would uncover material evidence concerning Plaintiff's functioning between 2012 and 2018. And the Commissioner conceded this point at argument. The question, then, is what the existing evidence establishes for that period. And the ALJ again failed to perform that analysis.

The Court concludes that substantial evidence supports a conclusion that Plaintiff was disabled and entitled to benefits during the period before bariatric surgery. The conclusion does not rest on obesity alone. Rather, it rests on the interaction between extreme obesity and documented weight-bearing, positional, respiratory, and pain-related impairments. Specifically, an examining physician observed a waddling gait, inability to heel- or toe-walk or fully squat, and the need for assistance changing position on the examination table. (AR 405). Imaging confirmed

knee osteoarthritis. (AR 424). Another examiner found breathing difficulty and knee pain due to morbid obesity and documented reduced knee and lumbar motion. (AR 413–14). A cardiologist recorded that Plaintiff became winded walking short distances and could not use a treadmill. (AR 440–43). Moderate airflow obstruction, asthma, sleep apnea, fibromyalgia, osteoarthritis, paresthesia, and morbid obesity persisted through the pre-surgical period. (AR 434–35, 543, 549, 1302, 1379, 1381, 1547, 1738–39, 1819). These findings are incompatible with the demands of the sedentary occupations on which the ALJ relied, absent functional qualifications that the ALJ never made for the pre-surgical period. Sedentary work ordinarily requires the ability to sit for approximately six hours and to stand or walk for approximately two hours in an eight-hour day, together with the capacity to sustain those functions and ordinary workplace attendance and pace. SSR 96-9p.

The Court does not disregard the contrary evidence. Normal cardiac testing, occasional normal strength or neurological findings, cardiological clearance for surgery, and some daily activities show retained abilities. But they do not establish the capacity for sustained competitive work when considered alongside the longitudinal evidence of gait, range-of-motion, knee, respiratory issues, and widespread-pain. Cardiological clearance to undergo surgery is not a vocational assessment. Normal strength and sensation do not answer whether extreme obesity combined with knee osteoarthritis and fibromyalgia permitted prolonged sitting, standing, walking, and positional transitions. And intermittent household activities do not establish eight-hour-day endurance.

The Court therefore finds that substantial evidence supports a finding that Plaintiff was disabled from February 29, 2012, through at least November 6, 2018.

**C. The Record Is Insufficient for the Court to Determine a Cessation Date**

To be clear, the finding above establishes a minimum disability period. It does not establish that Plaintiff's disability ceased on the date of surgery. Treatment is not *per se* medical improvement, and a surgical procedure does not establish immediate restoration of work capacity. Indeed, there was likely a period after surgery where it could be reasonably assumed that Plaintiff remained disabled. Or, when considering her new post-surgery related symptoms, perhaps she never improved to the point of being able to work. But the Court cannot make those factual findings on this record.

The Third Circuit has held that "fairness would certainly seem to require an adequate showing of medical improvement whenever an ALJ determines that disability should be limited to a specified period." *Chrupcala v. Heckler,* 829 F.2d 1269, 1274 (3d Cir. 1987). The governing regulations define medical improvement as a decrease in the medical severity of the impairments present at the most recent favorable disability determination, shown by changes in symptoms, signs, or laboratory findings. 20 C.F.R. § 404.1594(b)(1). Improvement is related to the ability to work only if it produces an increase in functional capacity to perform basic work activities. § 404.1594(b)(3)–(4).

The analysis is comparative. The Commissioner must compare the pre- and post-surgery medical evidence, determine whether medical severity decreased, and then determine whether any decrease increased the claimant's functional capacity. Here, there is no doubt that Plaintiff experienced substantial weight loss. While weight loss may be relevant, it is not dispositive. The pertinent question is whether sustained changes in symptoms, signs, and laboratory findings improved Plaintiff's ability to perform work-related functions.

November 6, 2018, is an appropriate boundary for this Court's finding on the current record because the surgery materially altered the evidentiary landscape. Before that date, the fully developed record provides substantial evidence for a finding of disability. After that date, substantial weight loss and other changes raise factual questions that the agency has, despite multiple hearings, many remands and different ALJs, still failed to resolve. The Court therefore leaves the continuation question open but firmly forecloses relitigating the period already established.

On remand, November 6, 2018, shall be treated as the earliest possible cessation date; but not a presumptive cessation date. The Court makes no findings in this regard. The Commissioner must determine whether, and when, sustained medical improvement related to work capacity occurred. If no such improvement occurred and no regulatory exception applies, disability continues. If the impairments existing at the favorable finding improved but a new impairment independently remained disabling, disability likewise continues under the applicable continuation framework.

**D. The Restroom Limitation Is Not Functionally Defined**

The singular RFC formulated by the ALJ contains another material error requiring correction on remand. The RFC restricts Plaintiff to "an indoor environment for restroom access." (AR 2941). That phrase does not identify a meaningful functional limitation.

Plaintiff testified to gastrointestinal problems after bariatric surgery and reported using Imodium and other medication. (AR 666–67, 672–73). Specifically, Plaintiff testified that she vomits every time she eats and has diarrhea requiring her to use the bathroom five to six times a day for at least fifteen minutes each time. (*Id.*). The ALJ relied upon treatment notes in which Plaintiff denied nausea and diarrhea or changes in bowel habits as well as the intermittent nature

of abdominal complaints. (AR 2950–52). The ALJ also noted a lack of corroboration for excessive restroom frequency and the absence of sustained aggressive gastrointestinal treatment. (*Id.*).

As an initial matter, the ALJ appears to have again conflated the pre- and post-surgical periods in evaluating Plaintiff's gastrointestinal complaints, relying heavily on medical evidence prior to November 6, 2018. Moreover, the ALJ simply adopted a nondescript restriction that is not capable of meaningful judicial review. The inclusion of the need for indoor restroom access necessarily means that the ALJ apparently credited some of the evidence in Plaintiff's favor. Yet the Court cannot determine whether the ALJ found that Plaintiff required only ordinary scheduled breaks, required some additional restroom trips but not enough to affect employment, or had no frequency limitation at all. Nor can the Court determine what evidence supports these unstated findings. As explained above, an RFC must state the maximum work-related functions a claimant can sustain and explain how the evidence supports each conclusion.

Restroom availability is materially different from frequency of restroom use. The vocational consequences of diarrhea or vomiting depend on a number of factors, including frequency, urgency, warning time, duration, predictability, time required to travel to and from the restroom, recovery time, aggregate time off task, and resulting lateness, early departures, or absences. An "indoor restroom" limitation answers none of those questions. Indeed, most jobs provide restroom access; the issue is whether and how often Plaintiff must leave the workstation outside ordinary breaks and whether employers would tolerate the resulting disruption and off-task time.

On remand, the Commissioner must therefore make explicit findings concerning:

1. the frequency of Plaintiff's diarrhea, vomiting, and urgent restroom episodes;
2. whether episodes occur outside ordinary scheduled breaks;
3. the average and maximum duration of each episode, including travel, cleanup, and recovery time;

4. the symptoms' predictability and the warning time available;
5. the effectiveness and side effects of treatment;
6. the aggregate daily time away from the workstation and corresponding percentage of time off task; and
7. any resulting absences, late arrivals, or early departures.

If the evidence does not support additional restroom-related restrictions, the Commissioner may so find, but must provide a thorough analysis to explain why, and reconcile that conclusion with the evidence and with any restroom limitation retained in the RFC. If the evidence supports such restrictions, they must be stated quantitatively to the extent the record permits and included in an appropriate hypothetical posed to a VE.

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is **REVERSED**. The Court finds Plaintiff disabled from February 29, 2012, through at least November 6, 2018. The matter is **REMANDED** for calculation and payment of benefits for the conclusively established period and for a determination, consistent with this Opinion, of whether and when Plaintiff's disability thereafter ceased under the medical-improvement standard. To be clear, these specific remand instructions do not direct a finding that disability continued after November 6, 2018. They intend to be as specific as possible to finally bring this litigation to a conclusion and to require the agency to answer that question under the correct legal framework and on a record divided into medically meaningful periods.

An appropriate Order accompanies this Opinion.

Christine P. O'Hearn

**CHRISTINE P. O'HEARN**
**United States District Judge**

November 16, 2026